RENDERED: FEBRUARY 2, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0280-MR

MARY FANT; HERMAN NORWOOD;
AND MILTON FANT                                             APPELLANTS

APPEAL FROM JEFFERSON CIRCUIT COURT
v.       HONORABLE MELISSA L. BELLOWS, JUDGE
ACTION NO. 21-CI-006661

BEAMTEAM, INC.; BEARNO'S, INC.;
FRANK D. GRIDER; KENTUCKY
FARM BUREAU MUTUAL
INSURANCE COMPANY; LIBERTY
MUTUAL INSURANCE COMPANY;
OHIO SECURITY INSURANCE
COMPANY; THE OHIO CASUALTY
INSURANCE COMPANY; AND THE
UNDERWRITERS GROUP, INC.                                    APPELLEES

AND

NO. 2023-CA-0294-MR

KENTUCKY FARM BUREAU
MUTUAL INSURANCE COMPANY                                    APPELLANT

APPEAL FROM JEFFERSON CIRCUIT COURT
v.       HONORABLE MELISSA L. BELLOWS, JUDGE
ACTION NO. 21-CI-006661

MARY FANT; BEAMTEAM, INC.;
BEARNO'S, INC.; FRANK D.
GRIDER; HERMAN NORWOOD;
LIBERTY MUTUAL INSURANCE
COMPANY; MILTON FANT; OHIO
SECURITY INSURANCE COMPANY;
THE OHIO CASUALITY
INSURANCE COMPANY; AND THE
UNDERWRITERS GROUP, INC.                                    APPELLEES


<u>OPINION</u>
<u>AFFIRMING</u>

** ** ** ** **

BEFORE:  ACREE, CALDWELL, AND EASTON, JUDGES.

EASTON, JUDGE:  While not consolidated, these appeals have been submitted to the same panel of this Court.  Both appeals will be addressed in this Opinion.  In both cases, the Appellants seek reversal of a summary judgment granted to the Appellee, Bearno's, Inc. ("Bearno's"), on negligence claims in a personal injury action arising from a motor vehicle accident.  Concluding that the circuit court correctly applied the law to undisputed facts, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Bearno's is a regional restaurant franchise in Kentucky and Indiana.  One of its franchisees is the Middletown, Kentucky location.  The franchisee for this location is Beamteam, Inc. ("Beamteam").  Frank Grider ("Grider") was a

delivery driver employed by Beamteam. Grider used his own car to deliver pizzas and other food for Beamteam.

On a rainy night in October of 2021, Grider was on the job driving on Aiken Road in Louisville. He hydroplaned. His car struck the car driven by Milton Fant with Mary Fant and Herman Norwood as passengers (collectively "Fant"). The collision led to serious injuries which are the subject of this suit. Fant sued Grider and his employer Beamteam as well as the franchisor Bearno's. Fant claimed Bearno's should be vicariously liable for Grider's negligence. Fant also alleged direct negligence by Bearno's.

Insurance coverage became an issue. The Appellant, Kentucky Farm Bureau Mutual Insurance Company ("Farm Bureau"), is the underinsured motorist insurance carrier for Fant. Farm Bureau crossclaimed against Grider, Beamteam, and Bearno's to recover in the event Farm Bureau was called upon to pay to its insured Fant.

After substantial discovery by the parties, Bearno's moved for summary judgment on all claims against it, which the circuit court granted. This partial summary judgment was made final and appealable. These appeals followed. We will elaborate on further details of the case in our analysis.

## STANDARD OF REVIEW

The proper standard of review on appeal when a
trial judge has granted a motion for summary judgment is

-3-

whether the record, when examined in its entirety, shows there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. The trial judge must view the evidence in a light most favorable to the nonmoving party, resolving all doubts in its favor. Because summary judgment does not require findings of fact but only an examination of the record to determine whether material issues of fact exist, we generally review the grant of summary judgment without deference to either the trial court's assessment of the record or its legal conclusions.

*Phoenix American Adm'rs, LLC v. Lee*, 670 S.W.3d 832, 838 (Ky. 2023) (citations omitted).

## ANALYSIS

To keep focus on the controlling issues, we start with recognition of matters which have not been decided. Any liability of Grider for his hydroplaning has not been determined. As a result, any vicarious or other liability of Beamteam and Bearno's has not been decided. For summary judgment purposes, we must resolve any doubts in the Appellants' favor and assume Fant will prove negligence by Grider based on the information in this record. There is a jury question on Grider's negligence.

Other matters are not pertinent to the question of negligence. Some emphasis has been placed on a franchise provision calling for Beamteam to have a certain amount of liability insurance. Beamteam may not have complied with this provision, and this is the subject of other claims in this suit which are not ripe for

-4-

decision.  The potential absence of such coverage has nothing to do with liability for negligence.  Insurance coverage determines who will contractually pay damages for such liability.  Failure to have insurance is not a path to tort liability itself.  *See Dale v. Commonwealth*, 604 S.W.3d 281 (Ky. App. 2019).

THE FRANCHISE AGREEMENT

The relationship among Bearno's, Beamteam, and Grider is governed by a written Franchise Agreement ("Agreement").  The Preamble of the Agreement explains one of its purposes is to provide "a uniform method of operating."  To achieve that purpose, Bearno's has a Manual of Operations and a Driver Safety Manual.  After the Preamble, the Agreement goes on to address in detail typical franchise issues such as use of Bearno's name and requirements for building a restaurant.

As far as employees are concerned, Section 4.B. of the Agreement makes it clear that Beamteam is the employer of all employees.  Beamteam is "exclusively responsible" for the terms of employment.  Beamteam is also responsible to "implement a training program" consistent with Bearno's requirements.  Under Section 9.G., "[t]he restaurant shall at all time be under the direct, day-to-day, full-time supervision of" Beamteam.

Section 15.B. gives Bearno's the right to terminate the franchise if Beamteam violates its terms.  Couched in terms of protecting Bearno's brand,

Section 9.E. includes the promise by Beamteam to follow the standards provided by Bearno's. This includes delivery of food outside the restaurant. Section 9.E.(3). Rather than terminate the franchise, Bearno's apparently directed a suspension of delivery services by Beamteam after the accident in question. It is not clear if this was a temporary suspension (*e.g.*, until insurance was obtained).

Section 7. of the Agreement declares that Bearno's and Beamteam are independent contractors. This declaration is not controlling, but it does indicate the intention of the parties. As to persons not party to the Agreement, another provision leaves no doubt that "nothing in this Agreement is intended, nor shall be deemed, to confer any rights or remedies upon any person or legal entity not a party hereto." Section 17.H.

THE NEGLIGENCE CLAIMS

Fant and Farm Bureau both contend that Bearno's should be vicariously liable for Grider's negligence due to the level of control Bearno's had over Beamteam and Grider. A separate claim of direct negligence is made. We will address these claims in that order.

Before we address these separate paths to liability, we take a moment to explain that we are not required to agree with an expert witness expressing an opinion about franchisor liability. We apply a legal standard provided by our Kentucky Supreme Court. We are also not inclined to take a single statement in a

deposition as creating a question of material fact. In response to leading questions, Jeffrey Beam of Beamteam said the Driver Safety Manual sets out "a lot of control [over] the day-to-day operations of your drivers[.]" Beam Depo. at 171-173. Neither Mr. Beam nor the expert can determine the legal question of how the proper standard is applied to all the circumstances of record in this case.

Vicarious liability for Bearno's would be under the legal umbrella of *respondeat superior* (Latin for "let the master answer"). This is an aspect of agency law. The Appellants suggest whether agency exists is a question of fact in this case. This argument depends on the rule of agency law applicable to franchisors in Kentucky. We agree with the circuit court that there is no genuine issue of material fact when this standard is applied. *See Nazar v. Branham*, 291 S.W.3d 599 (Ky. 2009) (question of agency is a matter of law when the relevant circumstances are not factually disputed). The actual terms of the Agreement and what the parties did or did not do about delivery drivers pursuant to the Agreement are not disputed.

As to Beamteam's liability, there is no question that Grider was its employee and was acting within the course and scope of his employment when the accident happened. Thus, Beamteam answers for Grider's negligence. A franchisor's control of a franchisee's employee is much more attenuated. With the expansion of the franchise business model, courts were called upon to adjust the

vicarious liability principle for a franchisor who is not the employer but may have some level of control over employee behavior. The Kentucky Supreme Court established the test for this vicarious liability in *Papa John's Intern., Inc. v. McCoy*, 244 S.W.3d 44 (Ky. 2008).

"[W]e adopt a rule in which the franchisor is vicariously liable for the tortious conduct of the franchisee when it, in fact, has control or right of control over the daily operation of the specific aspect of the franchisee's business that is alleged to have caused the harm." *Id*. at 47. Kentucky adopted this rule from the leading case for this majority view in America: *Kerl v. Dennis Rasmussen, Inc.*, 682 N.W.2d 328 (Wis. 2004).

Both *Papa John's* and *Kerl* involved allegations of intentional torts rather than negligence, but the general rule applies. We find particularly significant that both courts in *Papa John's* and *Kerl* cited a case with similar facts to the present case, specifically a case involving pizza delivery by a franchisee. *Pizza K, Inc. v. Santagata*, 547 S.E.2d 405 (Ga. App. 2001).

Georgia law recognized that a franchisor could be liable if it assumed an obligation to pay the franchisee's debt (not a factor in this case). Otherwise, the franchisor could be liable only if it acted as "a mere agent or alter ego" of the franchisee. *Id*. at 406. The franchise agreement in *Pizza K* had "specific and even strict requirements." *Id*. But such requirements did not equate with an "agreement

to exercise supervisory control over the daily activities" of the franchisee's employees. *Id*. at 407.

The Appellants can credibly argue that Bearno's had control or a right to control to some degree and that this control even extended to the area of the cause of harm (delivery). But we are not allowed to overlook the rest of the rule in context. The level of control must be so great as to amount to a right to control not with general rules but by oversight of daily activities. As stated in *Pizza K*, the level of control must equate with the franchisee being nothing more than an alter ego of the franchisor.

The majority rule on the agency question presented here is restrictive and favors the franchisor. Even in those states which have not adopted the same rule, we find support for the proposition that a franchisor is not vicariously liable for the negligence of its franchisee's delivery employees. We will examine two such cases.

Maine's highest court discussed vicarious liability of the Domino's pizza franchisor in *Rainey v. Langen*, 998 A.2d 342 (Me. 2010). The court called the Kentucky rule the "instrumentality" rule. *Id*. at 348. The court chose not to embrace this standard but instead relied upon the traditional "right to control" test. *Id*. at 349. Even under this test, the court noted the need to show control over day-to-day operations. The court noted the "numerous" requirements and standards in

the franchise agreement but determined that "these controls fall short" of control over day-to-day operations. *Id*. at 350.

Another case applying the traditional rule is *Viado v. Domino's Pizza, LLC*, 217 P.3d 199 (Or. App. 2009). In this case, the court recognized that Domino's set forth standards and even directives for delivery drivers (follow rules of the road, do not use cell phones while driving, wear seatbelts). "Setting those standards for a franchisee's employees and having the right to actually control how the franchisee's employees perform the physical details of driving are two different things." *Id*. at 211.

Thus, we see that the controlling part of the rule announced in *Papa John's* is not right to control generally. Rather, the type of control must be over the aspect of the business which caused the injury (here delivery drivers), **and** the level of control must be supervision of daily activities. Being able to generally control delivery by terminating the franchise or even a discontinuance of delivery service is not the type of daily involvement contemplated by the instrumentality test of *Papa John's*. As the rule is applied in *Pizza K*, Bearno's does not come close to being a mere alter ego for Beamteam.

We have reviewed cases cited by the Appellants which have found vicarious liability for the franchisor. For example, the Appellants cite cases from Florida. These cases are distinguishable in that the courts used traditional agency

principles to the different circumstances of the cases presented to find the potential for vicarious liability. The Florida courts did not apply Kentucky's rule in those cases. *Parker v. Domino's Pizza, Inc.*, 629 So. 2d 1026 (Fla. Dist. App. 1993). *See also Font v. Stanley Steemer Intern., Inc.*, 849 So. 2d 1214 (Fla. Dist. App. 2003).

Under the terms of the Agreement between Beamteam and Bearno's and in the actual circumstances of what was and was not done by the parties in this case, there can be no vicarious liability under *Papa John's*. There is some level of control in the Agreement and the manuals provided with it. The control is even over the area of the cause of the harm, the delivery service provided by Beamteam. But these circumstances do not equate with daily supervision by Bearno's to such an extent that Beamteam, Grider's direct employer, was just an alter ego of Bearno's. Put succinctly, Bearno's could only react to the actions of the franchisee to protect the franchisor's brand. Bearno's did not actually have the right to come in and run the place on a daily basis.

The Appellants also claim direct negligence by Bearno's. Essentially, they argue Bearno's assumed a duty toward Fant. Bearno's had some level of control, even if not enough for vicarious liability, and the failure to exercise that control led to the accident in which Fant was injured.

Negligence law generally comes from an acknowledgment that "every person owes a duty to every other person to exercise ordinary care in his activities to prevent foreseeable injury." *Grayson Fraternal Order of Eagles, Aerie No. 3738, Inc. v. Claywell*, 736 S.W.2d 328, 332 (Ky. 1987). But this does not mean that every connection which can be made between actions or inactions and injury can support a negligence claim. *See Morgan v. Scott*, 291 S.W.3d 622 (Ky. 2009) (car dealership was not liable when driver of loaner car caused an accident even though policy of having a dealership employee with the driver was violated; dealership was not required to assess the suitability of the driver beyond making sure he or she was not impaired).

A contract may intend for third-party beneficiaries of its terms. In such cases, duties may be assumed in favor of the third parties. In this case, the intention was clearly to the contrary in the governing Agreement. The duties between Beamteam and Bearno's in how deliveries were to be accomplished do not extend to Fant. These were contractual matters between them and do not give rise to negligence claims by Fant or others. *See Presnell Const. Managers, Inc. v. EH Const., LLC*, 134 S.W.3d 575 (Ky. 2004).

We understand the cases cited by the Appellants finding direct negligence based upon breach of an assumed duty. *See, e.g.*, *Bruntjen v. Bethalto*

-12-

*Pizza, LLC*, 18 N.E.3d 215 (Ill. App. 2014). Again, such cases are distinguishable and do not apply Kentucky law on the issues presented.

We also should not forget the component of a negligence claim of proximate cause as opposed to mere cause in fact. *See Lewis v. B & R Corporation*, 56 S.W.3d 432 (Ky. App. 2001). The Appellants insist that Bearno's should be liable because they could have prevented the accident from happening. If it had followed up on contractual obligations between it and Beamteam, it would have learned Beamteam was not having their drivers read the manual. Bearno's would have learned that Beamteam didn't have the required insurance. Bearno's could have stopped Beamteam's deliveries before this accident.

Such a series of events may have in fact prevented Grider's driving on the night in question. We are dealing here though with proximate cause of negligence in the operation of a vehicle on a specific occasion. This is the nature of the negligence claim of breach of duty by Grider that proximately caused Fant's injuries.

The record in this case raises more than doubt about how any failure by Bearno's could have been the proximate cause of the injuries claimed. The Appellants point out that the Driver Safety Manual had provisions about hydroplaning. They then simply assume Grider's reading this manual might have prevented the accident.

Grider was 51 years old at the time of the accident. He had been a delivery driver for 25 years. As an experienced driver, he knew about the dangers of hydroplaning. Grider stated in his deposition that there was nothing in the manual about hydroplaning that he did not already understand.

For any negligence eventually proven against Grider, Beamteam will answer under *respondeat superior*. For the reasons we have indicated, there is neither vicarious nor direct liability for negligence for Bearno's due to Grider's negligence. As a result, all claims asserted by the Appellants against Bearno's were properly dismissed. This includes the derivative claims for loss of consortium and the prospective insurance related claims of Farm Bureau to the extent such claims are based upon any liability of Bearno's. The Jefferson Circuit Court properly granted summary judgment to Bearno's and is AFFIRMED.

ALL CONCUR.

BRIEFS FOR APPELLANTS AND
APPELLEES MARY FANT, MILTON
FANT, AND HERMAN NORWOOD:

Ronald E. Johnson, Jr.
Louisville, Kentucky

BRIEF FOR APPELLANT
KENTUCKY FARM BUREAU
MUTUAL INSURANCE COMPANY:

William B. Orberson
Ryan D. Nafziger
Louisville, Kentucky

BRIEFS FOR APPELLEE
BEARNO'S, INC.:

David J. Kellerman
Mark S. Fenzel
McBrayer PLLC
Louisville, Kentucky

BRIEF FOR APPELLEE
FRANK D. GRIDER:

John R. Martin, Jr.
Hunter Rommelman
Louisville, Kentucky